UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, | Case No. 2:16-CV-478 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| LAS VEGAS DEVELOPMENT GROUP LLC, et al., | |
| Defendant(s). | |

Presently before the court is Magistrate Judge George Foley's report and recommendation. (ECF No. 58). The relevant defendants have not filed an objection and the time to do so has passed.

Also before the court is the Bank of New York Mellon ("BNYM") motion for summary judgment. (ECF No. 59). Defendants Royal Highlands Street and Landscape Maintenance ("Royal") filed a response (ECF No. 67), to which BNYM replied (ECF No. 79).

Also before the court is defendant Royal's motion for summary judgment. (ECF No. 61). BNYM filed a response (ECF No. 63), to which Royal replied (ECF No. 82).

Also before the court is defendants Airmotive Investments, LLC ("Airmotive") and Las Vegas Development Group, LLC's ("LVDG") motion for summary judgment. (ECF No. 62). BNYM filed a response (ECF No. 64), to which Airmotive and LVDG replied (ECF No. 84).

**I.     Facts**

This action arises from a dispute over real property located at 10912 Fisher Island Street, Las Vegas, Nevada 89141 ("the property"). (ECF No. 20).

James C. Mahan
U.S. District Judge

Ronald Burnside is the former owner of the property at issue. *See* (ECF No. 20). On July 25, 2005, Burnside, refinanced the property with a loan in the amount of $354,250.00 from Stearns Lending, Inc. ("Stearns"). (ECF No. 59-1). Stearns secured the loan with a deed of trust, which names Stearns as the lender, First American Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary as nominee for the lender and lender's successors and assigns. *Id*. On March 29, 2011, BNYM acquired all beneficial interest in the deed of trust via an assignment, which BNYM recorded with the Clark County recorder's office. (ECF No. 59-2).

On November 5, 2010, Royal, through its agent defendant Alessi & Koenig, LLC ("A&K"), recorded a notice of delinquent assessment lien ("the lien") against the property for Burnside's failure to pay Royal in the amount of $1,314.00. (ECF No. 59-4). On January 13, 2011, Royal Creek recorded a notice of default and election to sell pursuant to the lien, stating that the amount due was $2,560.76 as of January 7, 2011. (ECF No. 59-5).

On April 2, 2012, Royal recorded a notice of trustee's sale against the property. (ECF No. 59-6). On March 6, 2013, Royal sold the property in a nonjudicial foreclosure sale to LVDG in exchange for $25,100.00. (ECF No. 59-7). On March 18, 2013, LVDG recorded the trustee's deed upon sale with the Clark County recorder's office. *Id*.

On March 4, 2016, BNYM initiated this action. (ECF No. 1). In its first amended complaint, BNYM asserts six causes of action: (1) declaratory relief under the Takings Clause of the Fifth Amendment against all defendants; (2) declaratory relief under the Due Process Clauses of the Fifth and Fourteenth Amendment against all defendants; (3) wrongful foreclosure against all defendants; (4) violation of NRS 116.1113 *et seq.* against Royal and A&K; (5) intentional interference with contractual relations against all defendants; (6) quiet title against all defendants. (ECF No. 20).

Now, the parties have filed cross-motions for summary judgment, requesting the court to resolve whether the foreclosure sale extinguished the deed of trust. (ECF Nos. 59, 61, 62).

. . .

. . .

## II.    Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the nonmoving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to withstand summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a dispute of material

1
fact conclusively in its favor.  *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 631 (9th Cir. 1987).  It is sufficient that "the claimed factual dispute be shown to require a

jury or judge to resolve the parties' differing versions of the truth at trial."  *Id.*

In other words, the nonmoving party cannot avoid summary judgment by relying solely on

conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040,

1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

for trial.  *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the

truth, but to determine whether a genuine dispute exists for trial.  *See Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 249 (1986).  The evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in his favor."  *Id.* at 255.  But if the evidence of the

nonmoving party is merely colorable or is not significantly probative, summary judgment may be

granted.  *See id.* at 249–50.

### III.  Discussion

The parties have filed cross-motions for summary judgment, disputing whether the

foreclosure sale extinguished the deed of trust.  (ECF Nos. 59, 61, 62).

Under Nevada law, "[a]n action may be brought by any person against another who claims

an estate or interest in real property, adverse to the person bringing the action for the purpose of

determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require

any particular elements, but each party must plead and prove his or her own claim to the property

in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v.*

*Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

marks omitted).  Therefore, a party must show that its claim to the property is superior to all others

in order to succeed on a quiet title action.  *See also Breliant v. Preferred Equities Corp.*, 918 P.2d

314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove

good title in himself.").

Section 116.3116(1) of the Nevada Revised Statutes[1] allows an HOA to place a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to the subparagraph (2)(b) exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. BNYM*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

NRS 116.3116 *et seq.* ("Chapter 116") permits an HOA to enforce its superpriority lien with a nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

NRS 116.31166(1) provides that when an HOA forecloses on a property pursuant to NRS 116.31164, the following recitals in the deed are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern . . . all statutory prerequisites to a valid HOA lien foreclosure sale." *See Shadow Wood Homeowners Assoc. v. N.Y.*

---

[1] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–13, when the events giving rise to this litigation occurred.

[2] The statute further provides as follows:

*Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016). Nevertheless, courts retain the equitable authority to consider quiet title actions even when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, the parties have provided the recorded notice of delinquent assessment, the recorded notice of default and election to sell, the recorded notice of trustee's sale, and the recorded trustee's deed upon sale. *See* (ECF No. 59-5, 59-6, 59-7). Further, the recorded trustee's deed of sale contains the necessary recitals to establish compliance with NRS 116.31162 through NRS 116.31164. (ECF No. 59-7); *see Shadow Wood*, 366 P.3d at 1112. Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale was valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

While NRS 116.3116 accords certain deed recitals conclusive effect, it does not conclusively entitle the buyer at the HOA foreclosure sale to success on a quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting that NRS 116.31166 defeats, as a matter of law, actions to quiet title). Thus, the question remains whether plaintiff has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.*

"When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id.*

---

2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

BNYM argues that the foreclosure sale did not extinguish the deed of trust because (1) Royal did not provide BNYM with foreclosure notices; (2) the foreclosure sale was commercial unreasonable; (3) Chapter 116 is unconstitutional under the Takings Clause of the Fifth Amendment; and (4) Chapter 116 is unconstitutional under the Due Process Clauses of the Fifth and Fourteenth Amendments. (ECF No. 59).

a. Notice

BNYM argues that Royal did not provide notice of the foreclosure sale in compliance with the Due Process Clause of the Fourteenth Amendment. (ECF No. 41). The court disagrees.

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 3:15-cv-00390-RCJ-VPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, Royal provided reasonably calculated notice when it mailed a copy of the notice of default and notice of trustee's sale to BNYM's predecessor in interest. (ECF Nos. 59-13, 12). Royal also recorded the notice of trustee's sale, posted the notice for 20 days in three public places, and published the notice in the Clark County Legal News for a period of three weeks. (ECF No. 12). These activities were sufficient to apprise BNYM's predecessor in interest of the foreclosure sale and afford it and its successors an opportunity to present objections. Therefore, BNYM's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev.

1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

### b. Commercial Reasonability

BNYM argues that the court should grant its motion because the foreclosure sale for less than 13% of the property's fair market value ($200,000.00) is grossly inadequate and because BNYM can establish evidence of fraud, unfairness, or oppression. (ECF No. 59).

BNYM further argues that the *Shadow Wood* court adopted the restatement approach and held that a purchase price that is far less than 20% of the fair market value as the date of the sale is grossly inadequate as a matter of law. (ECF No. 59)

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528,

---

[3] *See, e.g., Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963))) ("*Long*").

Despite BNYM's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Moreover, BNYM overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price. BNYM also fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify setting aside of the foreclosure sale. BNYM relies on its repeated allegations that Royal failed to provide adequate notice of the foreclosure. However, as discussed in the previous section, the amount due was set forth in the notice of default and election to sell and, subsequently, in the notice of trustee's sale. (*See* ECF Nos. 59-4, 59-6). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BNYM chose to allow the foreclosure sale to proceed.

Accordingly, BNYM's commercial reasonability argument fails as a matter of law, as BNYM failed to set forth sufficient evidence of fraud, unfairness, or oppression. *See, e.g., Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party

challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

    *c. Takings Clause*

BNYM contends that Chapter 116 violates Takings Clause of the Fifth Amendment. (ECF No. 59).

The Takings Clause prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V; *see also Single moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746 (9th Cir. 2003) (holding that the United States Constitution protects individuals only from government actions.). BNYM's contention, however, has already been rejected. *See, e.g.*, *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortgage, a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 974 (Nev. 2017) ("[T]he extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not violate the Takings Clauses.").

Further, because this case involves a private lien-holder conducting a nonjudicial foreclosure, there is no government action. *See also Apao v. Bank of New York*, 324 F.3d 1091, 1095 (9th Cir. 2003) (a lender's non-judicial foreclosure pursuant to state law was not a government action); *Mendez v. Fiesta Del Norte Home Owners Ass'n*, No. 2:15-CV-00314-RCJ-NJ, 2015 WL 3507699, at *3 (D. Nev. June 4, 2015) ("non-judicial foreclosure sales by private lien-holders are not traditional government functions"); *see also Deutsche Bank national trust Company v. TBR I, LLC*, No. 3:15-CV-00401-LRH-WGC, 2016 WL 3965195 at *3 (D. Nev. July 22, 2016) (holding that a nonjudicial foreclosure pursuant to Chapter 116 does not constitute government action).

    *d. Due Process Clause*

BNYM argues that the court should grant summary judgment because, under *Bourne Valley*, Royal foreclosed pursuant to a facially unconstitutional state statute. (ECF No. 59); *see Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016). However, BNYM's reliance on *Bourne Valley* is misplaced.

In *Bourne Valley*, the Ninth Circuit held that Chapter 116 violated the Due Process Clause of the Fourteenth Amendment because it did not require a party foreclosing on a property to

provide notice to a holder of any subordinate security interest.  *Bourne Valley*, 832 F.3d at 1159.  This conclusion was based on the interpretation that NRS 116.31168(1) did not incorporate NRS 107.090, which requires notice of default to any person with a subordinate security interest.  *Id*.

When the Ninth Circuit ruled in *Bourne Valley*, there was no authority on the interpretation of NRS 116.31168(1).  Left with the general doctrines of statute interpretation, the court declined to incorporate NRS 107.090 on the grounds that it would render NRS 116.31168(1) superfluous.  *Id*. (citing *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 117 P.3d 171, 173 (2005)).

Since the Ninth Circuit's decision in *Bourne Valley*, the Nevada Supreme Court has provided its interpretation of Chapter 116, holding that NRS 116.31168(1) does incorporate NRS 107.090.  *SFR Invs. Pool 1, LLC. v. The Bank of N.Y. Mellon*, 422 P.3d 1248, 1252 (Nev. 2018) (expressly refuting *Bourne Valley*).  Under this ruling, NRS 116.31168(1) requires notice to subordinate interest holders and, thus, does not violate the Fourteenth Amendment.  *Id*.

Both the Ninth Circuit and the Supreme Court have recognized, "a [s]tate's highest court is the final judicial arbiter of the meaning of state statutes."  *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975)); *see also Knapp v. Cardwell*, 667 F.2d, 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").  Accordingly, this court will follow the Nevada Supreme Court's decision and hold that Royal foreclosed on the property pursuant to a constitutional statute.

**IV.    Conclusion**

In light of the foregoing, BNYM has not provided sufficient grounds for the court to set aside the foreclosure sale.  Because this order will resolve all pertinent issues, the court will enter judgment and close the case.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Magistrate Judge Foley's report and recommendation (ECF No. 58), be and the same hereby is, REJECTED as moot.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 59) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Royal's motion for summary judgment (ECF No. 61) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Airmotive and LVDG's motion for summary judgment (ECF No. 62) be, and the same hereby is, GRANTED.

The clerk shall enter judgment accordingly and close the case.

DATED February 5, 2019.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge